CASE 38—PETITION EQUITY—JUNE 27.

## Witherspoon vs. Farmers' Bank.

APPEAL FROM ANDERSON CIRCUIT COURT.

1. An officer in Morgan's Confederate army, who aided in the capture of Mount Sterling, but who neither counseled, aided, or even approved the robbery of the bank at that place by a portion of Morgan's soldiers, was not liable in damages to the bank for such robbery.

2. The capture of the town itself was not, in the military sense, an unlawful act, but was allowable, by the laws of war, between antagonist parties recognized as belligerents.

T. N. LINDSEY, for appellant, cited *Civ. Code, sec.* 221; *Myers' Supp.*, 38; *Wharton's Crim. Law, p.* 120; 1 *B. Mon.*, 96; 10 *B. Mon.*, 423.

HARLAN & HARLAN, for appellee, cited *Myers' Supp.*, 1; 3 *Dall.*, 199.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

On the 8th of June, 1864, *Gen. John Morgan*, at the head of. a Confederate army, captured Mount Sterling, Kentucky, and the Federal forces stationed there to defend it.   On the morning of the capture, and immediately after the capitulation, one of his subaltern officers and a small band of his soldiers forcibly entered the vault of the Mount Sterling Branch of the Farmers' Bank of Kentucky, and abstracted about $60,000, none of which was ever. restored.   Whether this spoliation was ordered or sanctioned by the General, or what was done with the money, does not appear.

The appellant, as a lieutenant in the invading army, aided in the capture of the town; but there is no evidence tending to prove that he, in any way, counseled, aided, or even approved, the robbery of the bank.   On the contrary, as far as such a negative is susceptible of proof, facts proved by several witnesses conduce strongly to the presumption that he had no sort of agency in the robbery either before or after its perpetration.

. But, for imputed participation in the outrage, the mother bank, now appellee, sued him for damages, and, as he was then non-resident in Kentucky, proceeded against him by a warning order, and, without answer, procured a judgment for $59,057 33, and an order for the sale of a tract of land and other property which it had attached.   After the sale, but before a confirmation of the report of it, the appellant filed an answer denying any participation in the robbery before or after, direct or indirect, openly or covertly.

On the issue thus formed, the testimony just alluded to was taken.

On the final hearing of the case, thus opened, the circuit court affirmed its former judgment and confirmed the sale.

The appellant was certainly not legally liable for this flagrant wrong, unless every other. soldier with him in the battle was individually responsible for it.   And, as no other appears or can be imagined, we may presume that the circuit court assumed that comprehensive ground.   But, according

to the record, this is indefensible. Had it appeared that such spoliation was one of the objects of Morgan's invasion of Kentucky, then he and his whole army, jointly and severally, would have been guilty, and responsible, not only to the indignant judgment of the civilized world, but to the laws of their country, so far as such a savage act might be condemned as an abuse of belligerent right. But, *whatever may have been the fact,* there is no proof of any such wrongful purpose. On the contrary, there is some evidence that, on entering Kentucky, an order was announced interdicting all such outrages. And if, nevertheless, *Morgan* had any such unlawful design, there is no evidence tending, in the slightest degree, to show that the appellant knew or approved it.

It is true, as argued for the appellee, that the appellant, by aiding in the capture of Mount Sterling, helped to "pave the way" to the robbery. But it is not true, as also argued, that the capture of the town itself was, in the military sense, an unlawful act. It was not forbidden, but allowed, by the laws of war between antagonist parties recognized as belligerents. It may be admitted that, had there been no capture of the town, there would have been no robbery of the bank. And so, likewise, had there been no unconstitutional secession, there would have been no rebellion; and had there been no civil war, there would have been no such plunder of the bank. Hence, the assumed and perverted principle which would make the appellant responsible, would hold equally liable all the agitators who excited the rebellion, or helped its cause in either a civil or military capacity.

This is too much. But this logical argument, *ex absurdo*, is a satisfactory refutation of the only plea urged in support of the judgment.

The outrage was great, and ought to be punished; the loss was heavy, and ought to be repaired. But we cannot see how or why the appellant, uncivic and reprehensible as his recreance from the Union cause may have been, should be made the victim for a wrong in which he took no more part than every other rebel in Morgan's army, or even elsewhere.

Wherefore, the judgment of the circuit court is reversed, and the cause remanded, with instructions to quash the sale and dismiss the appellee's petition.